IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TIMOTHY SAIN,                                    )
                                                 )
                          Plaintiff,             )   Civil Action No.: 05 C 6394
                                                 )
           v.                                    )   Suzanne B. Conlon, Judge
                                                 )
TIMOTHY BUDZ, THOMAS MONAHAN,                    )
RAYMOND WOODS, SHAN JUMPER,                      )
STEVE STROCK, ROEN ISHAM, LEA                    )
CHANKIN, CAROL VANCE, JOVITA                     )
ANYANWU, VICKY KOKAS, LIBERTY                    )
HEALTH CARE CORPORATION, and                     )
various other defendant(s) that will be named    )
upon discovery of their identities,              )
                                                 )
                          Defendants.            )

## MEMORANDUM OPINION AND ORDER

Timothy Sain, a civilly committed detainee of the Illinois Department of Human Services ("DHS"), filed a civil rights complaint against Timothy Budz, Thomas Monahan, Raymond Woods, Shan Jumper, Steve Strock, Roen Isham, Lea Chankin, Carol Vance, Jovita Anyanwu, Vicky Kokas, and the Liberty Health Care Corporation. Monahan, Strock, Kokas, and Isham move to dismiss. For the reasons set forth below, the motion is granted in part and denied in part.

### BACKGROUND

For purposes of this motion, the court accepts all well-pleaded allegations in the complaint as true. *Cler v. Ill. Educ. Ass'n*, 423 F.3d 726, 729 (7th Cir. 2005). The following facts are derived from the complaint. Under the Sexually Violent Persons Commitment Act, Sain was held at DHS' Joliet Treatment and Detention Facility ("TDF") since October 2000. Complaint ("Compl.") Count ("Ct.") I at ¶ B. He was HIV positive and suffered from chronic fevers and colds. *Id.*; *see also*

Compl. Ct. III at ¶ D. At all relevant times, Monahan was the acting DHS facility director; Strock, Kokas, and Isham were TDF security therapist aids. Compl. at ¶¶ I(E), I(H)(3)-(8). Only the allegations concerning these four defendants are discussed here.

Sain filed a five-count *pro se* complaint in November 2005.[1] In Count I, he complains of pest and plumbing problems in his cell and of racial discrimination in cell assignment. Compl. Ct. I at ¶ B. He alleges his cell had roaches year-round, and flies, wasps, bees, and spiders during the summer. *Id.* The plumbing in his cell was obsolete and as a result, a foul odor emitted from the sink and toilet. *Id.* The paint and plaster were falling off his cell walls. *Id.* These problems aggravated his medical conditions. *Id.* Since July 2001, he repeatedly requested to move to a new building that offered better cells. *Id.* But members of the resident moving committee, including Strock and Isham, denied his requests on the basis that his HIV infection made him unsuitable for the new building. *Id.* He claims the denials were discriminatory, alleging white residents with HIV infection were housed in the new building. *Id.*

In Count II, he complains of unsafe drinking water. He alleges TDF tap water was foul smelling and potentially poisonous. Compl. Ct. II at ¶ C. Monahan knew the tap water to be unsafe for drinking and instructed his employees not to drink it. *Id.* But Sain was forced to drink tap water as it was his sole source of water. *Id.* He claims the water endangered his well-being and possibly his life. *Id.*

Count III encompasses three claims: (1) denial of medical care; (2) unsanitary dispensing of medication; and (3) delay in emergency care. Compl. Ct. III at ¶ D. First, he alleges all security therapist aids denied his repeated requests to treat his chronic fevers and colds. *Id.* Second, he

---

[1] The court appointed counsel for Sain on January 26, 2006.

alleges that while dispensing medication, nurses routinely worked without gloves and picked up medication from the floor. *Id.* Residents also routinely contaminated medication. *Id.* Third, he alleges that under DHS policy, a resident requiring emergency medical care must be escorted to an outside hospital by an armed guard. *Id.* Because armed guards had to be dispatched from a facility seven miles away, this policy caused delays in transporting sick residents. *Id.* He claims the policy exposed him to risks of delay in emergency care. *Id.* Sain alleges Monahan knew about the risks, but failed to change the policy *Id.*

In Count IV, he claims defendants failed to protect him from assault by another resident. Compl. Ct. IV at ¶ E. He alleges that in February or March 2001, he was raped by William Steven, another TDF resident. *Id.* Kokas, who was sexually involved with Steven, acted as the lookout for Steven during the rape. *Id.* After the rape, Kokas said Steven would kill Sain unless he kept quiet. *Id.* Sain was intimidated by Steven. *Id.* Monahan, Kokas, and other security therapist aids conspired to prevent him from reporting the rape and Kokas' sexual relationship with Steven. *Id.*

In Count V, he claims Liberty Health Care Corporation and its agents discriminated against black residents. Compl. Ct. V at ¶ F. He alleges the Liberty defendants applied different disciplinary standards for black and white defendants. *Id.*

## DISCUSSION

### I. Motion to Dismiss Standard

"A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, and dismissal of an action under the rule is warranted only if 'no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Cler*, 423 F.3d at 729 (quoting *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000)). On a motion to dismiss, all well-pleaded

allegations are accepted as true and all reasonable inferences are drawn in favor of the nonmoving party. *Cler*, 423 F.3d at 729. To survive a motion to dismiss, a complaint "need not plead particular legal theories or particular facts in order to state a claim." *DeWalt*, 224 F.3d at 612. All that is required is a short and plain statement giving defendants fair notice of the nature and basis of the claim. *Id.* Moreover, a *pro se* complaint must be liberally construed. *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999).

## II. Section 1983 Standard

As a civilly committed detainee, Sain is protected by the due process clause of the Fourteenth Amendment. *Collignon v. Milwaukee County*, 163 F.3d 982, 987 (7th Cir. 1998). His protections are at least as extensive as those against cruel and unusual punishment extended to prisoners by the Eighth Amendment. *See id.*; *see also Brown v. Budz*, 398 F.3d 904, 909 (7th Cir. 2005) (applying an Eighth Amendment analysis on a § 1983 claim brought by a TDF resident). The Eighth Amendment requires defendants to house Sain under "humane conditions" and provide him with "adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Moreover, defendants must take reasonable measures to guarantee Sain's safety. *Id.* To state a conditions of confinement claim, Sain must allege (1) a sufficiently serious deprivation; and (2) defendants' deliberate indifference in causing his deprivation. *Id.* at 847.

Sain sues Monahan, Strock, Kokas, and Isham in their individual capacities. Compl. at ¶¶ I(F), I(H). To impose individual liability under § 1983, Sain must allege each defendant caused or participated in the constitutional deprivation. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). In other words, his complaint must show a causal connection or an affirmative link between each defendant and the alleged deprivation. *Id.* To satisfy this requirement, he may allege that a

defendant knew about a deprivation and that he facilitated it, approved it, or turned a blind eye to it. *Id.*

### III. Count I

Defendants argue Count I should be dismissed because Sain's allegations do not constitute a constitutional deprivation. This argument is without merit. Prolonged pest infestation, combined with other problems, is sufficient to support a conditions of confinement claim. *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1995) (allegations of low temperature, excessive noise, and pest infestation state a § 1983 claim). Sain alleges continuous pest infestation, bad plumbing, and falling plaster in his cell. Compl. Ct. I at ¶ B. He endured these problems since October 2000. *See Dixon v. Godinez*, 114 F.3d 640, 646 (7th Cir. 1997) (common problems may be a constitutional violation if they exist for a prolonged period). Accordingly, Count I states a conditions of confinement claim. *Antonelli*, 81 F.3d at 1431.

Arguing the contrary, defendants rely on five cases. None deals with allegations similar to Sain's. *See Bell v. Wolfish*, 441 U.S. 520, 530-31 (1979) (placing two inmates in a cell designed for one); *Henderson*, 196 F.3d at 845 (exposure to second-hand smoke); *Henderson v. Lane*, 979 F.2d 466, 469 (7th Cir. 1992) (limiting showers and exercise to one per week); *Hardiman v. Sheahan*, No. 96 C 3478, 1998 WL 89110, at *2 (N.D. Ill. Feb. 13, 1998) (exposure to a plugged toilet for 13 days); *McBride v. Ill. Dep't of Corr.*, 677 F. Supp. 537, 539 (N.D. Ill. 1987) (exposure to odors of cell mate, toilet, and pest-control spray). Sain's alleged housing problems are more objectionable and longer lasting than those in the cases cited. Defendants' reliance on these cases is misplaced.

Defendants advance two additional arguments. Neither has merit. Defendants argue Sain has failed to allege that he was treated differently because of his race. This argument contradicts the

complaint, which clearly states: "defendant(s) acted with racial prejudice against plaintiff" in denying his request for a cell transfer. Compl. Ct. I at ¶ B. Defendants next argue, without any factual or legal support, that Sain has failed to allege injury resulting from his conditions of confinement. But he alleges his housing problems aggravated his HIV condition. *Id.* To require additional pleading, as defendants suggest, would conflict with the notice pleading standard. *See* Fed. R. Civ. P. 8(a); *Conley v. Gibson*, 355 U.S. 41, 48 (1957) ("pleading is [not] a game of skill"; its purpose "is to facilitate a proper decision on the merits"). Accordingly, Count I sufficiently states claims based on conditions of confinement and racial discrimination.

Of the four defendants moving to dismiss, Sain names only Isham and Strock in Count I. Compl. Ct. I at ¶ B. A liberal reading of Count I does not infer Monahan or Kokas had any knowledge of Sain's housing problems or his requests to move. Accordingly, Count I is dismissed as to Monahan and Kokas. *See Gentry*, 65 F.3d at 561.

## IV. Count II

Defendants argue Sain has failed to allege actual injury in Count II. This argument ignores that Sain need not plead present injury to state a claim based on unsafe drinking water. *Robinson v. Page*, 170 F.3d 747, 748 (7th Cir. 1999); *see also Helling v. McKinny*, 509 U.S. 25, 33 (1993) (observing that a detainee "could successfully complain about demonstrably unsafe drinking water without waiting for an attack of dysentery"). Moreover, Sain alleges unsafe drinking water endangered his well-being and possibly his life. Compl. Ct. II at ¶ C. Thus, he has standing to bring this claim. *See Martin v. Snyder*, No. 00 C 983, 2002 WL 484911, at *7 (N.D. Ill. Mar. 28, 2002) (allegations of headaches, gastric problems, nausea satisfy the requirement to plead actual injury from unsafe drinking water).

6

Defendants argue Count II is analogous to the complaints of odors in *McBride*, 677 F. Supp. at 539. The court disagrees. While detainees are not entitled to an environment completely free of unpleasant odors, their entitlement to safe drinking water is beyond question. *See Farmer*, 511 U.S. at 832 ("humane conditions" include "adequate food [and by extension, water]"); *see also French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985) (recognizing sanitary food as a necessity). Defendants' suggestion that Count II is "legally frivolous" must be rejected.

In Count II, Sain alleges Monahan advised his employees not to drink TDF tap water. Compl. Ct. II at ¶ C. It can be reasonably inferred that as DHS employees, Strock, Kokas, and Isham knew about the alleged water hazard and turned a blind eye to Sain's exposure to it. Thus, Sain sufficiently states a claim against all four defendants. *See Gentry*, 65 F.3d at 561.

## V. Count III

Count III encompasses three claims. The first claim is based on denial of medical treatment. Moving to dismiss, defendants argue Sain has alleged neither an injury nor deliberate indifference. Contrary to their argument, the complaint states Sain was HIV positive and "constantly sick with fever and colds." Compl. Ct. I at ¶ B, Ct. III at ¶ D. A reasonable inference could be drawn that his chronic sicknesses resulted from the alleged denial of medical care. He alleges that in response to his repeated requests for treatment, all security therapist aids told him to "lay down" and "rest." Compl. Ct. III at ¶ D. Defendants suggest this response was adequate. The adequacy of defendants' response, however, cannot be resolved on a motion to dismiss. So long as Sain alleges that he was an HIV patient suffering from chronic fevers and colds and that defendants denied treatment, his claim survives this motion. *See Estate of Novack ex rel. Turbin v. County of Wood*, 226 F.3d 525, 529 (7th Cir. 2000); *cf. Higgins v. Corr. Med. Servs. of Ill., Inc.*, 178 F.3d 508, 514 (7th Cir. 1999)

7

(Rovner, J., dissenting) (to defeat a motion for summary judgment, detainee need only show issues of fact exist as to whether defendants knew of his serious medical need); *cf. Lieberman v. Budz*, No. 00 C 5662, 2001 WL 527409, at *1 (N.D. Ill. May 16, 2001) (dismissing a § 1983 claim for failure to allege deliberate indifference).

In his claim based on denial of medical treatment, Sain makes no allegation against Monahan. *See* Compl. Ct. III at ¶ D. As a supervisor, Monahan "cannot be personally liable under a theory of *respondeat superior*." *Gentry*, 65 F.3d at 561. Absent allegations of his personal involvement, the claim for denial of medical treatment must be dismissed as to Monahan. *Id.*

In the same vein, the second claim in Count III must be dismissed as to Monahan, Strock, Kokas, and Isham. Alleging DHS' method of dispensing medication was unsanitary, Sain brings this claim against "hospital care nurses," but does not plead any involvement by these four defendants. Compl. Ct. III at ¶ D. As a result, they must be dismissed from this claim. *See Gentry*, 65 F.3d at 561.

In his third claim, Sain alleges Monahan failed to change the policy of requiring an armed guard to transport a resident who needs emergency medical care. Defendants argue Sain lacks standing to bring this claim. The court agrees. The Constitution limits the jurisdiction of federal courts to the resolution of cases and controversies. U.S. CONST. art. III, § 2, cl. 1. To satisfy Article III standing, a plaintiff must allege facts showing an "injury in fact" — a causal relationship between that injury and the conduct underlying the litigation. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Accordingly, Sain must allege either that DHS policy delayed his emergency treatment resulting in injury or that he would likely suffer future injury as a result of the policy. *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *Higgason v. Farley*, 83 F.3d 807, 810 (7th Cir. 1996)

(prisoner "does not allege an injury to himself, and [therefore] does not have standing"). But he alleges neither. *See* Compl. Ct. III at ¶ D. He therefore lacks standing to challenge DHS policy. *See Sierakowski v. Ryan*, 223 F.3d 440, 444-45 (7th Cir. 2000) ("a plaintiff in search of prospective equitable relief must show a significant likelihood and immediacy of sustaining some direct injury"). This claim must be dismissed.

## VI. Count IV

In Count IV, Sain claims defendants failed to protect him from rape and conspired to prevent him from reporting the rape. Defendants argue Count IV is time-barred. The alleged rape occurred in February or March 2001; Sain filed this case in November 2005. The two-year limitations period has indeed elapsed. But Sain alleges that Kokas relayed to him Steven's threat to kill him if he made any attempts to report the rape. Compl. Ct. IV at ¶ E. As a result, Sain did not seek redress for the rape until Steven left TDF. *Id.* These allegations give rise to factual issues as to whether equitable estoppel or equitable tolling applies to Count IV. *See Smith v. City of Chicago Heights*, 951 F.2d 834, 840-41 (7th Cir. 1992) (a district court must consider whether limitations period may be tolled based on allegations that defendants "had conspired and intentionally withheld information" concerning a § 1983 claim). Dismissal on statute of limitations grounds is inappropriate.

Count IV alleges Monahan and Kokas participated in the cover-up. Compl. Ct. IV at ¶ E. The complaint also implicates Strock and Isham by referring to "other Security Therapist Aids." *Id.* Thus, Sain sufficiently states a claim against these defendants. *See Gentry*, 65 F.3d at 561.

## VII. Count V

In Count V, Sain asserts a racial discrimination claim against Liberty Health Care Corporation and its agents. Compl. Ct. V at ¶ F. Even the most liberal reading of Count V cannot

tie Monahan, Strock, Kokas, or Isham to this claim. *See Henderson*, 196 F.3d at 846 (although held to less stringent standards, "a *pro se* complainant can plead himself out of court by pleading facts that undermine the allegations set forth in his complaint"). As a result, Count V must be dismissed as to these four defendants. *See Gentry*, 65 F.3d at 561.

## VIII. Qualified Immunity

Defendants argue they are entitled to qualified immunity because Sain's alleged deprivations do not amount to constitutional violations. This argument is untenable. Sain had an established constitutional right to adequate housing (Count I), water (Count II), medical care (Count III), and protection (Count IV). *Farmer*, 511 U.S. at 832. Dismissal on this ground is baseless as a matter of law.

## CONCLUSION

For the reasons set forth above, the motion to dismiss is granted in part and denied in part. Count I is dismissed as to Monahan and Kokas. Count III is dismissed as to Monahan; Count III is dismissed as to Strock, Kokas, and Isham with respect to the claims based on the method of dispensing medication and the policy of requiring armed guards to transport residents who need emergency care. Count V is dismissed as to Monahan, Strock, Kokas, and Isham. All remaining claims survive.

ENTER:

Suzanne B. Conlon
United States District Judge

March 3, 2006